UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Brianne Cook,
    Plaintiff

    v.                                Civil No. 08-cv-496-SM
                                       Opinion No. 2010 DNH 009
PC Connection, Inc.,
    Defendant


**O R D E R**

Brianne Cook brings this action seeking compensatory and punitive damages for defendant's alleged acts of gender-based discrimination. Specifically, she says that although she was qualified for a vacant sales position at PC Connection, defendant refused to hire her when it discovered that she is a transsexual post-operative woman. She claims she was the victim of disparate and discriminatory treatment as a result of both her gender and her status as a transsexual, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (count one). She also brings a supplemental state law claim under New Hampshire's Law Against Discrimination, N.H. Rev. Stat. Ann. ("RSA") ch. 354-A (count two).

PC Connection denies that its decision not to hire Cook was in any way related to her gender or her transsexual status and moves for summary judgment. Although Cook twice sought (and was

granted) additional time within which to file an objection to PC Connection's motion, she failed to do so in a timely fashion. Recently, however, she filed an untimely objection.

Despite the objection's untimeliness, the court has considered it. Nevertheless, that objection fails to identify any genuinely disputed material facts that would warrant a trial. PC Connection has demonstrated that, given the undisputed material facts, it is entitled to judgment as a matter of law. Accordingly, for the reasons discussed below, defendant's motion for summary judgment is granted.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of

Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

If, however, the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, unsupported conclusions, and mere speculation. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

## Background

Well before her gender reassignment surgery, Cook applied to work for PC Connection as a sales account manager, under her former name, Brian Cook. That application was rejected for two reasons. First, although she claimed that she had been employed by PC Connection previously, and that PC Connection's marketing department was actively recruiting her, neither statement was

true.  Second, Cook conceded that she was actually interested in working in marketing, and was seeking the vacant sales position as a means to get her "foot in the door."  PC Connection says its experience has shown that employees who are not genuinely interested in sales quickly become dissatisfied with those positions.  Accordingly, given Cook's expressed desire to transition from sales to the marketing department, it says it was not interested in spending the time and money necessary to train Cook for a sales account manager position.  In short, PC Connection says Cook's 2000 application for employment as a sales account manager was rejected because she was not candid during the application process and because she lacked a genuine interest in the sales position.  Cook does not challenge that decision (or the reasons for it) in this litigation.

Subsequently, Cook completed her gender reassignment surgery and, in 2003, changed her name to Brianne.  Then, in May of 2006, Cook attended a job fair at PC Connection's Merrimack, New Hampshire, facility and again applied for a position in the sales department.  According to Cook, PC Connection's representatives with whom she spoke were impressed with her credentials, personality, and knowledge of the field.  But, in an apparent effort to conceal the fact that she had undergone gender reassignment surgery, when she completed the written job

application Cook represented that she had never used another name in her work and/or education records, and that she had not previously filed an application for employment with PC Connection or any of its subsidiaries. Defendant's Exhibit A (document no. 12-8) at 161. Neither representation was true. When she completed the application, Cook acknowledged that "[f]alse or misleading information in [her] application or interview(s) may result in rejection of [her] application or, in the event of employment, discharge." Id. at 163. Finally, she incorrectly represented to PC Connection that the "answers given [in her] application were] true and complete to the best of [her] knowledge." Id.

Later, during a routine post-interview background check, PC Connection discovered that, contrary to her representations, Cook had previously applied (and been rejected) for employment under the name Brian Cook. It says it then rejected her pending application for the same reasons it rejected her earlier application: lack of candor and lack of genuine interest in a sales position.

Cook, on the other hand, says PC Connection's decision not to hire her was based upon unlawful gender-based discrimination. In support of that position she says:

> I asked Kate Murphy [the now-former employee of
> defendant who processed Cook's 2006 application] why
> PCC was no longer interested in me after some stellar
> interviews on site, at the conclusion of which she
> stated to me, "Brianne, you just blew everyone away
> today," and after PCC conducted a background check on
> me, and after I successfully completed a pre-employment
> on-line questionnaire, and after PCC asked if they
> could contact my references.
>
> Her initial reply was that they found more qualified
> candidates, but I pushed back on her for the real
> reason, as I know that I totally impressed them during
> my interviews on-site.  She did not answer me at first,
> but after a very long pause, she finally said that she
> had discovered that <u>I had applied to the company before
> as a man in 2000</u>.

Plaintiff's Answers to Interrogatories, Exhibit E to plaintiff's

memorandum (document no. 15-7) at 1 (emphasis supplied).


For its part, PC Connection denies that Cook's gender or her

surgery played any role in its decision not to hire her.  Roger

Brock, defendant's Vice President for Employee Relations and

Staffing, testified that:

> In my review of the files from the original application
> by Brian Cook in 2000, I read notes entered by Anne
> Velardi, the recruiter who first had contact with Cook.
> These notes reflect her concerns about his suitability
> for the sales position, especially his motivation, and
> reflect PC Connection's longstanding reluctance to hire
> someone interested in another position for a sales
> position.  I also observed that Cook was not hired in
> 2000 because he misrepresented himself to Ms. Velardi,
> asserting falsely that PC Connection's Marketing
> Department was actively pursuing him, and that he had
> previously been an employee of PC Connection.

> I observed that on her 2006 application, Brianne Cook affirmed that she had never applied to PC Connection or any of its subsidiaries in the past.  Given her prior application in 2000, this was demonstrably false.
>
> I observed that on her 2006 application, Brianne Cook affirmed that she had never applied to PC Connection or any of its subsidiaries under a different name.  Given her prior application as "Brian Cook," this was demonstrably false.
>
> Based upon these two false affirmations, I discerned a pattern of conduct in Ms. Cook's applications, consistent with her prior application, that demonstrated a lack of candor.  This is unacceptable in a PC Connection employee. . . ..
>
> Furthermore, it was clear from her 2006 application that Ms. Cook had unrealistic salary expectations — she was seeking more than $50,000 — for a sales position as an account manager, the base salary for which was $25,000 and first year total compensation averages less than $30,000.
>
> For these reasons, I instructed Kate Murphy to terminate the hiring process for Brianne Cook and deny her application.

Affidavit of Roger Block (document no. 12-3) at paras. 10-15.

In October of 2006, Cook filed a charge of sexual discrimination with the New Hampshire Commission on Human Rights, alleging, as she does in this case, that PC Connection refused to hire her because she is a transsexual post-operative woman. After investigating Cook's claim, the Commission found no probable cause to believe that she was the victim of unlawful sexual discrimination.

> The Commission has found in the course of its investigative process that the Complainant did provide false and misleading statements in her application for employment with the Respondent.  The Commission evaluated both parties' evidence while providing the Complainant with the most generous of inferences and interpretations.  However, the Respondent's position is consistent in that [it] treated Brian a male in 1999 and Brianne a female in 2006 the same.  The Complainant has not met her burden of proof of sex discrimination per [the governing state regulation].  Therefore, there is no probable cause of discrimination. . . . For the reasons discussed above, the Motion to Dismiss is GRANTED based on No Probable Cause.

New Hampshire Commission for Human Rights, Order on Respondent's Motion to Dismiss (document no. 12-8) at 36.  This litigation ensued.

**Discussion**

I.   Title VII and the Parties' Respective Burdens.

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  In cases such as this, where there is little overt evidence of gender-based discrimination, courts typically employ the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973).  See also Carey v. Mt. Desert Island Hosp., 156 F.3d 31, 34 (1st Cir. 1998).

Initially, a plaintiff claiming sex discrimination must establish the elements of a prima facie claim.  The court of appeals has described those elements as follows:

> A plaintiff makes out a claim of disparate treatment by showing that: (1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought; (3) [she] was subjected to adverse employment action; and (4) the position remained open or was filled by someone else with similar qualifications.

Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citation omitted).  If she succeeds in doing so, a presumption of discrimination arises and the burden shifts to the employer, which must "state a legitimate, nondiscriminatory reason for the adverse employment action."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000) (citation omitted).  Importantly, however, "[t]he employer's burden is merely a burden of production; the employee maintains the burden of proof throughout.  If the employer meets its burden, the presumption of discrimination evaporates."  Id.  See also Enica v. Principi, 544 F.3d 328, 343 (1st Cir. 2008).

In short, then, if the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to

articulate a legitimate, non-discriminatory explanation for the adverse employment action taken against the plaintiff. If the defendant succeeds in carrying that modest burden of production, the burden reverts to the employee, who must then demonstrate that the reason articulated by the employer was a mere pretext for unlawful gender discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). See also LeBlanc v. Great American Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993). To carry that burden, the employee must produce "not only minimally sufficient evidence of pretext, but evidence that overall reasonably supports a finding of discriminatory animus." Id. at 843 (citation and internal quotations omitted). In other words, he or she "may not simply refute or question the employer's reasons. To defeat summary judgment at this stage, a plaintiff must produce evidence that the real reason for the employer's actions was discrimination." Gadson v. Concord Hosp., 966 F.2d 32, 34 (1st Cir. 1992).

The same burden-shifting framework applies to Cook's state law claim under RSA ch. 354-A. See, e.g., E.D. Swett, Inc. v. N.H. Comm'n for Human Rights, 124 N.H. 404, 408-09 (1983); Scarborough v. Arnold, 117 N.H. 803, 807 (1977); Parker v. MVM, Inc., 2007 DNH 68 (D.N.H. May 22, 2007); Bresett v. City of Claremont, 2002 DNH 159 (D.N.H. August 28, 2002).

II.  Plaintiff's Evidence.

Assuming there is sufficient evidence to conclude that Cook has made out a prima facie claim of gender-based discrimination (a point defendant disputes), PC Connection has articulated plausible, rational, and lawful reasons for its decision not to hire her.  That imposes on Cook the obligation to point to some evidence from which a trier of fact could reasonably conclude that PC Connection's proffered nondiscriminatory justifications are merely a pretext for unlawful gender-based discrimination.  She has failed to carry that burden.

The sole piece of evidence supportive of her discrimination claim is the statement Kate Murphy is alleged to have made, explaining that PC Connection decided not to hire Cook when it discovered that she had "applied to the company before as a man in 2000."  That statement (assuming, for purposes of resolving PC Connection's motion, that it was actually made), is plainly ambiguous.  It could mean that, independent of the false statements in Cook's job application, PC Connection decided not to hire her when it discovered that she had undergone gender reassignment surgery and was formerly a man.  Alternatively, it could mean, as PC Connection claims, it decided not to hire Cook after it discovered that, contrary to the representations in her

job application, she had previously applied for, but been denied, employment at PC Connection.

Given the ambiguous nature of the statement, it is not, standing alone, sufficient to permit a rational trier of fact to conclude, by a preponderance, that PC Connection's proffered explanation for its decision is merely a pretext for unlawful gender-based discrimination. Cook has not, for example, produced any evidence suggesting that PC Connection hired some applicants who had made similar or analagous false statements on their applications, while it refused to hire her. Nor has she pointed to any other evidence which, even when viewed in the light most favorable to her claims, would support the inference that her gender (or her status as a transsexual post-operative woman) played a role in PC Connection's decision not to hire her.

## Conclusion

As she had in her prior application for employment at PC Connection, Cook made several false statements in her 2006 job application. And, as it did earlier, PC Connection says it rejected her application when it discovered those false statements. Thus, it would certainly appear that PC Connection treated Cook in exactly the same manner when she applied for employment as a man and when she later applied as a woman.

Because Cook has failed to point to sufficient evidence to permit a properly instructed, rational jury to conclude otherwise, and because PC Connection has articulated (and properly supported) rational, plausible, and lawful reasons for its decision not to hire Cook, it is entitled to judgment as a matter of law as to Cook's state and federal discrimination claims.

For the foregoing reasons, as well as those set forth in defendant's memorandum of law (document no. 12-2), defendant's motion for summary judgment (document no. 12) is granted. Defendant's motion to strike (document no. 17) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                         _____
                                         Steven J. McAuliffe
                                         Chief Judge

January 13, 2010

cc:  Mary Notaris, Esq.
     Martha Van Oot, Esq.
     Jeremy D. Eggleton, Esq.